# Tobias & Co. v. Treist & Co.

*Statutory Trial of the Right of Property.*

1. *Statutory trial of the right of property; evidence of bank deposits by debtor.*—In a statutory trial of the right to a stock of goods levied upon under an attachment, where one of the material questions at

Vol. 103.

issue is the quantity and value of the goods owned by the debtor at the time of their sale to the claimant, and there is evidence of the value of the debtor's stock of goods six months prior to the sale and also the quantity and value of the goods bought by him during the intervening time, and that the proceeds of all the goods sold by him during such time were regularly deposited in a certain bank, the testimony of the cashier of said bank as to the amount of the deposits made by said debtor during the six months referred to is admissible, as tending, in connection with the other evidence, to show the value and quantity of the debtor's goods at the time the sale thereof was made to the claimant.

2. *Same; evidence as to the time of making an inventory of the goods sold.*—In such a claim suit, where the claimant shows that the sale was made according to an inventory attached to the bill of sale, and that such inventory was made within a certain time, it is competent for the plaintiff to introduce evidence tending to show that an inventory of the debtor's stock of goods could not have been made within the designated time.

3. *Same; evidence of amount of insurance carried by debtor admissible*—In such suit, evidence of the amount of insurance carried by the debtor upon his stock of goods is admissible, as tending to show their value.

4. *Same; evidence of the value of another stock of goods inadmissible*—In such a suit, after a witness, who has shown himself to be competent to testify to the value of the debtor's stock of goods at the time of the sale to the claimant, testifies to the value of such stock, and further states that another merchant's stock was worth more than a certain specified amount, it is not competent, for the witness to be asked on cross examination "How much more?" the question and answer having no relevancy to the issue involved in the case; but the extent to which a witness may be cross-examined, for the purpose of testing his credibility, is largely within the discretion of the court.

5. *Failure to reserve exceptions; can not be cured by a motion for a new trial; appeal.*—A failure to reserve an exception to the ruling of the trial court at the proper time can not be cured by a motion made for a new trial, so as to render such ruling revisable on appeal.

6. *Judgment in claim suit.*—Upon the trial of the right of property, levied on by attachment, if the issue be found against the claimant, the proper judgment is that the property is subject to the levy of the attachment, and is condemned to the satisfaction of the judgment which has been, or may be obtained; and a judgment that the plaintiff in attachment recover of the claimant the value of the property as assessed by the jury is erroneous.

7. *Same; when amendable on appeal.*—In a statutory trial of the right of property, levied on by attachment, a judgment that the plaintiff in attachment recover of the claimant the value of the property as assessed by the jury, though erroneous, furnishes no cause

for the reversal of the judgment, when the record discloses sufficient matter to amend by; but under the provisions of the statute, (Code, § 2836), such judgment will be amended on appeal.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

The proceedings in this case were had upon a statutory trial of the right of property, which was instituted by T. Tobias & Co. interposing a claim to certain goods and merchandise, which had been levied upon as the property of M. Nathan, doing business under the firm name of M. Nathan & Co., under an attachment sued out by the appellees, Treist & Co. The claimants based their right to the property so levied upon on a bill of sale, which had been made and executed by M. Nathan to them in payment, as recited in the said bill of sale, of an antecedent indebtedness to T. Tobias & Co. of $3,737. This indebtedness was evidenced by four notes, and in payment thereof the said Nathan conveyed a portion of the stock of goods contained in his store at Bessemer, Alabama. He also, about the same time, conveyed the rest of his stock of goods to Ida Levy and A. Kolsky, in payment of indebtedness to each of them. The bill of sale of the claimants in this case, T. Tobias & Co., was executed on December 26th, 1892. At the time of the execution of this bill of sale, said M. Nathan was indebted to the firm of Treist & Co. for goods which had been sold by them to him, and it was for the collection of this indebtedness that the writ of attachment was sued out.

The main issue of the fact in this case, as is shown by the bill of exceptions, was as to the value of the goods owned by said M. Nathan on December 26, 1892, the day of the execution of the bill of sale to the claimants. Bob Crook, one of the witnesses for the plaintiffs, after testifying that he had worked for Nathan in November and December, 1892, and had been engaged in the dry goods business for several years, further testified that the market value of the goods in the store of Nathan between December 20 and 26, 1892, was from $18,000 to $20,000. During his examination he testified that he had seen several stocks of goods worth $10,000, and that Mr. Rosenbaum's stock was worth over $10,000. He was then asked by the claimants, "How much more?" The

plaintiffs objected to this question on the ground of its being immaterial. The court sustained the objection and the claimants excepted.

One Hardin Cobbs, a witness for the plaintiffs, testified, that he was assistant cashier of the bank with which the firm of M. Nathan & Co, did their business, and made their deposits. He also testified as to the amount of his deposits during the months of August, September, October, November and December; which was to the effect that his deposits in September, 1892, were $500 less than in August; his October deposits $300 or $400 less than the September, and the December deposits $1,600 less than the July deposits. The claimants objected to this testimony, and moved to exclude the same, on the ground that it was immaterial to the issue in this case. The court overruled their motion, and the claimants duly excepted.

Upon the examination of the insurance agent, with whom the said Nathan took out policies of insurance upon his goods during the year 1892, he was asked: "What was the amount of policies on his stock of goods in Bessemer?" The claimants objected to this question, on the ground of its being irrelevant and immaterial, and duly excepted to the court's overruling their objection. The witness answered that the amount of the first insurance was $25,000, which expired in January, 1893; and that between July and October, he had $6,500, which was on all of his dry goods.

M. Nathan in his testimony, as a witness for the claimants, testified that the cost of the goods sold to T, Tobias & Co. was $4,651, and that their actual worth on the market would not exceed $3,235. It was also shown that the inventory of the goods sold to claimants, which was attached to the bill of sale, was made after T. Tobias, a member of said firm, arrived in Bessemer—the day before the execution of the bill of sale—and that upon Tobias agreeing to take the goods in payment of his indebtedness against the said M. Nathan & Co., the inventory was taken, and the bill of sale made the day following his arrival in Bessemer. There was much testimony introduced to show how long it would take to make out an inventory of a stock of goods the size of that of M. Nathan & Co. The testimony for the plaintiffs tended to show that it would take much longer than the time in

which the witnesses for the claimants testified the inventory in this case was made. To this portion of the testimony introduced by the plaintiffs the claimants objected, and duly excepted to the court's overruling their several objections.

Upon the return of a verdict for the plaintiffs, the claimants moved the court to set aside the said verdict, and to grant them a new trial. The grounds of this motion were that the verdict was contrary to the evidence, and that it was contrary to the charge of the court to the jury. It is not shown that there was any evidence introduced in support of this motion. The motion for a new trial was overruled, and the claimants duly excepted.

The judgment entry contained the following recital: "It is, therefore, considered by the court, that the plaintiffs have and recover. of the defendant the sum of $4,651.16, the value of the property so assessed as aforesaid, together with all the costs in this behalf expended, for which execution may issue." The claimants appeal, and assign as error the several rulings of the trial court, to which exceptions were reserved, and to the judgment as rendered.

E. E. WEBB, for appellant.

JOHN H. MILLER, contra.

COLEMAN, J.—Treist & Co., appellees, sued out an attachment against M. Nathan, for five hundred and ninety dollars, which was levied upon certain goods and merchandise as the property of the defendant. The goods and merchandise levied upon were in three several parts or lots at the time of the levy, claimed, respectively, by Ida Levy, T. Tobias & Co.. and A. Kolsky, as vendees of M. Nathan. These vendees executed separate and distinct claim bonds, for the trial of the right of property. By consent of the parties the suits for the trial of the right of property were consolidated and tried together, with the understanding that a separate verdict should be returned as to each claimant, as if tried separately.

The goods and merchandise a few days prior to the levy of the attachment, were in the possession of M. Nathan and were his property. The *bona fides* of the debt

of the attaching creditor, and that it was owing before
the sale, were uncontroverted facts. The claimants
claimed title by purchase in payment of antecedent in-
debtedness. Tobias was a brother-in-law and Ida Levy
a sister of M. Nathan. The legal principles which apply
are well settled.

No exceptions were reserved to the instructions given
by the court to the jury, and whether correct or incor-
rect, these instructions, not being excepted to, are not
revisable on appeal. There were some exceptions re-
served upon questions of evidence, and also the over-
ruling of a motion for a new trial. The action of the
trial court upon these questions furnish the grounds
upon which the assignments of errors are based.

One material question at issue was the quantity and
value of the goods of M. Nathan on December 26, 1892,
the day of the sale. There was evidence showing the
value of his stock in July, 1892, and also the quantity
and value of the goods bought subsequently to that
date, and prior to the sale to claimants. There was
also evidence tending to show that the proceeds of all
the goods sold in the intervening time were regularly
deposited in the bank at Bessemer. The plaintiffs in-
troduced the cashier as a witness to prove the deposits
including the months of July and December. This evi-
dence was properly admitted. It tended, in connection
with the other evidence, directly to establish the value
and quantity of the goods on hand, when the sale was
made to claimants. The assignments of error on this
point are not well taken.

The claimants had introduced testimony tending to
show that the goods sold were inventoried, and the time
within which the inventory could be taken. It was
competent for plaintiff to show, if he could, that this
testimony was not true. There was no error in admit-
ting the evidence; neither was there error in permitting
plaintiffs to prove the amount of insurance carried by
the insolvent debtor upon the goods. All these were
facts, to be considered by the jury, in making up their
conclusion.

One of the witnesses for plaintiffs, after stating facts
to show his competency, testified that Nathan's stock of
goods was worth about $18,000 to $20,000; that he had
seen several stocks of goods worth $10,000. That Ro-
senbaum's was worth more than $10,000. He was asked

"How much more ?" · The plaintiffs objected to the question, "How much more?" We do not see what bearing the question or answer could have on the issue. How far such an examination may be prosecuted is largely in the discretion of the court.—*Noblin v. The State*, 100 Ala. 13.

There was no error in overruling the motion for a new trial. The transcript is not in good shape as to the motion for a new trial. The grounds of the motion are stated, but it does not appear that any facts were referred to, or offered in evidence, in support of the motion. We have stated that there were no objections or exceptions, reserved to the instructions given by the court to the jury. The omission to reserve an exception at the proper time cannot be cured by a motion for a new trial. We have considered the exceptions which were reserved to the rulings of the court upon questions of evidence, and hold that in this respect the court was free from error.

The judgment of the court, rendered upon the verdict of the jury, was not a proper judgment. On a trial of the right of property, the plaintiff in attachment is not entitled to a personal judgment against the claimant. Where the issue is found for the plaintiff by the jury, the judgment of the court is one of condemnation of property to the satisfaction of the judgment, if judgment has been recovered against the defendant; and if the suit is still pending, and plaintiff's claim against the defendant has not been reduced to a judgment, then the court renders judgment that the property levied upon by the attachment is liable to the satisfaction of the plaintiff's claim, if plaintiff obtain judgment against the defendant.

The record shows affirmatively that the bill of exceptions was not signed in time to constitute a part of the record, but as no objection has been directed to its legality, we have considered it as if regularly signed according to law.

The error of the judgment of the circuit court upon the verdict of the jury will be corrected here, and as corrected will be affirmed—*Myers v. Conway & Co.*, 90 Ala. 109; *Gray v. Raiborn*, 53 Ala. 40; *Parker v. Wimberly*, 78 Ala. 64; *Kennon & Hill v. Adams Bros.*, 100 Ala. 288.

Corrected and affirmed.